UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRANT ARMSTRONG & ARMSTRONG RX GP, LLC,, <br><br> Plaintiffs, <br> v. <br><br> WHITE WINSTON SELECT ASSET FUNDS, LLC, <br><br> Defendant/Third Party Plaintiff, <br> v. <br><br> ARMSTRONG RX II GP, LLC & ARMSTRONG RX II, LP, <br><br> Third-Party Defendants. | ) ) ) ) ) ) ) Case No. 1:16-CV-10666-MLW ) ) ) ) ) ) ) ) ) ) ) |

**PROPOSED ORDER**

Plaintiffs, ____, and Defendant, ____, (hereafter the "Parties"), by and through their respective attorneys, hereby agree and stipulate to the following:

1. Electronically stored information ("ESI") will be part of the discoverable material in this case and the parties agree cooperatively to exchange discoverable ESI and use reasonable, good faith efforts to identify, preserve, collect, review, and produce non-privileged ESI and other documents that are relevant to a party's claims or defenses and which are proportional to the needs of this case under Fed. R. Civ. P. 26(b)(1).

2. The parties agree to plan for, and to meet and confer about, discovery questions under Fed. R. Civ. P. 26(f), including the preservation of discoverable ESI, the development of a joint proposed discovery plan, the subjects and locations on and in which discovery may be needed, the timing of discovery and any questions about ESI and the form in which it should be produced.

   **Sources and Limitations on ESI**

3. Absent a showing of good cause by the requesting party, the parties shall not modify, on a going forward basis, their internal procedures used by them in the ordinary course of business to backup, archive, store, or manage information systems and ESI, except that the parties will preserve non-duplicative discoverable ESI currently in their possession,

    custody, or control and proportional to the needs of this case.

4. The parties recognize their mutual obligation to take reasonable and proportional steps to identify and preserve discoverable information within a party's possession, custody, and control, and they agree to identify and preserve ESI only from the following data sources: [email systems, PC/laptop hard drives, file server, document management systems].

5. Absent a showing of good cause, the following categories of ESI need not be preserved or collected and are considered inaccessible due to an undue burden and expense or because the information is more reasonably available elsewhere:

    a. Unallocated, slack space, deleted data, file fragments, or other data accessible by the use of computer forensics;

    b. Random access memory (RAM), temporary files, or other difficult-to-preserve data;

    c. Data concerning online access, such as temporary Internet files, browser history, file or memory caches and cookies;

    d. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system, or network (e.g., date last accessed or printed);

    e. Backup or archived data that is substantially duplicative of data that is more reasonably accessible elsewhere;

    f. Telephone or VOIP voice messages, unless saved or attached to email communication;

    g. Instant messages, pin-to-pin, and other electronic text messages sent to and from mobile devices or smartphones that are not regularly stored or saved on a server dedicated to storing such data;

    h. Other data stored on mobile or handheld devices or smartphones, such as calendars, tasks, call logs, photographs, contacts or notes, provided that copies of such information is routinely saved or stored elsewhere;

    i. Operating system files, executable files, network, server, or system logs;

    j. Data from systems that are no longer in use that is unreadable or unintelligible on current systems.

**General Production Format**

6. The parties will produce ESI in single-page TIFF image format provided that the documents do to become illegible or unusable when converted to TIFF image format. Documents that become illegible or unusable when converted to TIFF image format (e.g., MS Excel files) will be produced in native format. The parties reserve their respective rights to seek additional electronic documents in their native format for good cause shown.

7. Documents originating in paper form will be scanned to TIFF image format at 300 DPI and undergo Optical Character Recognition (OCR). These documents will be produced in single-page TIFF image format, as indicated below, together with document-level OCR text files. Paper documents will be logically unitized to reflect original document boundaries for each document.

8. All ESI and documents will be produced with image load files, the data fields provided in Table 1, attached, and either extracted text or text generated using OCR that render documents searchable. In those instances where redaction is used, OCR text will be provided in lieu of the extracted text to allow for removal of the redacted text from production. For documents produced in native format, in addition to producing extracted text and the data fields in Table 1, the producing party will supply the TIFF-image slip sheets endorsed with the production number and level of confidentiality assigned under any applicable protective order in this case.

9. ESI will be processed and produced with all hidden text (e.g., track changes, speaker's notes, hidden rows or columns, comments, notes, written marks or words) and formulas exposed, expanded and extracted and rendered in the TIFF image.

10. ESI and documents originally in paper form shall be produced and identified as kept in the usual course of business. A producing party need not include in its production any indication of the document request(s) to which a document may be responsive.

11. Images, native files, metadata and text files to be produced will be delivered on or via appropriate media, and they will be organized in separate folders named "Images," "Native," "Data," and "Text."

12. Documents that are converted to TIFF image format will be produced in accordance with the following technical specifications:

    a. Single-page, 1-bit, group IV TIFF image files at 300 dpi, with color images in single-page JPEG format;

    b. Bates numbers should be endorsed on the lower right hand corner of all TIFF images and will be a unique, consistently formatted identifier;

    c. Confidential designations, if any, will be endorsed on the lower left corner of all TIFF images;

    d.  Presentations, including Power Point slides, should be rendered to TIFF in "notes" format to include the full slide image together with any speaker notes following the slide image; and

    e.  TIFF images will be produced with a comma delimited image load file in the .OPT format.

**Data Format**

13. Extracted data, including the data fields listed in Table 1, will be produced in a delimited data file in accordance with the following technical specifications:

    a. The first line of the data file must be a header row identifying the field names;

    b. Date fields in the data file will be provided in the MM/DD/YYYY format;

    c. All attachments should sequentially follow the parent document or email and include data fields identifying documents as "parent" documents or "attachments" with appropriate group identifiers;

    d. The fields of data to be produced are listed in Table 1, attached; and

    e. The data file for scanned paper documents will, at a minimum, contain the BATESSTART, BATESSTOP, CUSTODIAN, and TEXT fields.

**Searchable Text**

14. Searchable text of the entire documents will be produced either as extracted text for all documents that originate in electronic format or, for paper documents and from which text cannot be extracted, as text generated using OCR technology. For redacted documents, the text of the redacted version of the document will be produced.

15. Searchable test will be produced as a document-level multi-page ASCII text file with the text file named the same as the BATESSTART field in the data file. Text files will be placed in a separate directory for production.

**Native Files**

16. Native file documents, email, or attachments that are included in the production will be produced under the following criteria:

    a. Documents produced in the native file format will have the file name named the same as the BATESSTART number;

798831.1

    b. The full path of the native file will be provided in the data file for the NATIVE_FILE field;

    c. When the native files are produced because rendering the file to TIFF would not result in a viewable image, a TIFF image slip sheet placeholder will be produced with the file name and the legend: "Produced in Native Format;" and

    d. The confidentiality designation applied to any document under a protective order entered in this action will be produced in the load file in the DESIGNATION field.

**Deduplication**

17. A producing party may deduplicate documents prior to production. Duplicate documents may be withheld from production provided deduplication is performed as follows:

    a. As to email that remains in electronic form and has not been printed, they will be considered duplicates if (i) the hash values of two or more emails are identical; the following fields of metadata associated with the email are the same [ ]; and (iii) the body or text of the email is exactly the same.

    b. For non-email electronic documents, they will be considered duplicates if (i) they have the same hash value and (ii) the following fields of metadata are the same [ ].

18. Should a producing party deduplicate any documents in accordance with the procedure outlined above, the parties waive any objection as to the authenticity of the version of the document produced and the fields of data associated with such copy.

19. For good cause shown, the receiving party shall have the right to request all duplicates of a produced document.

**Keyword Searching**

20. Because keyword searching will be used to identify documents responsive to requests for the production of documents, the parties agree cooperatively and promptly to develop, exchange, and agree upon a list of keyword search terms to be used to conduct searches for potentially responsive ESI.

**Privileged Documents and Logs**

21. Nothing herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and privilege or work product before production.

798831.1

22. The parties agree to confer on the nature and scope of privilege logs, including whether categories of information may be excluded from such logs and whether alternatives to document-by-document privilege logs can be exchanged, including:

    a. The parties are not required to include in their privilege logs any documents or ESI generated after the filing of the complaint;

    b. Activities undertaken and information gathered in compliance with the duty to preserve discovery material are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B);

    c. For email threaded conversations, the parties are required to log only the most recent, most inclusive email;

    d. The parties may log documents by category rather than by individual entries for each document. This process does not relieve a party from making the necessary determination on a document-by-document basis; and

    e. The parties agree that the production of such logs will occur after document production.

**Inadvertent Production and Clawback**

23. If a producing party inadvertently produces to a receiving party (1) any information or document without designating it as confidential as required, or, (2) any information or document that is privileged or otherwise immune from discovery under the attorney-client or work product doctrines, the receiving party shall, at the request of the producing party, immediately return all such inadvertently produced information and documents to the producing party, including the actual production media used, or confirm in writing that all copies have been destroyed.

24. The producing party will prepare and deliver a replacement disk or set containing correct confidentiality designations of all non-privileged documents that were contained in the original production. Electronic copies of the inadvertently produced documents must be removed from the electronic system of the receiving party.

25. Under Fed. R. Civ. P. 502, the inadvertent production of undesignated confidential information or documents, or information or documents that are privileged or otherwise immune from discovery under the attorney-client or work product doctrines, shall not be deemed a waiver, in whole or in part, of the producing party's claim of restriction or privilege either as to specific information disclosed or information on the same or related subject matter.

26. The return or destruction of inadvertently produced privileged documents does not preclude the receiving party from disagreeing with the designation of any portion of a document as privileged and bringing a motion to compel its production. But the

798831.1

> substance of any such inadvertently produced privileged document shall not be referenced publicly in the motion or memorandum, or attached as an exhibit, except to the extent that such substance is provided in a privilege log.

27. The parties agree to meet and confer promptly and in good faith as to any discovery dispute prior to bringing any such dispute to the attention of the court.

28. This Stipulation relates solely to the protocol for identifying, preserving, collecting, reviewing, and producing ESI and documents in this case.  Any party may bring a motion to modify or clarify the application of this Stipulation.

29. This Stipulation, if approved by this Court, will be adopted and enter as an Order of this Court in this action.

_____
Dein, J., USMJ

DAVIS MALM & D'AGOSTINE, P.C.                    MCCARTER & ENGLISH, LLP


s/s Patrick T. Clendenen                         s/s Nicholas Allen
Patrick T. Clendenen (BBO #564165)               Nicholas Allen (BBO #663409)
Robert M. Kaitz (BBO# 681917)                    265 Franklin Street
One Boston Place                                 Boston, MA 02110
Boston, MA 02108                                 617-449-6500 (telephone)
617-367-2500 (telephone)                         nallen@mccarter.com
617-523-6215 (facsimile)
pclendenen@davismalm.com
rkaitz@davismalm.com                             **For White Winston Select Asset Funds, LLC**

**For Grant Armstrong; Armstrong RX GP, LLC; Armstrong RX II GP, LLC; and Armstrong RX II, LP.**


### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 11, 2016.

s/ *Robert M. Kaitz*
Robert M. Kaitz

798831.1