UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRANT ARMSTRONG AND ARMSTRONG RX GP, LLC | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| WHITE WINSTON SELECT ASSET FUNDS, LLC | ) ) ) |
| Defendant/Third Party Plaintiff, | ) ) ) |
| v. | ) ) |
| ARMSTRONG RX II GP, LLC AND ARMSTRONG RX II, LP, | ) ) ) |
| Third Party Defendants. | ) ) |

C. A. No. 1:16-cv-10666-JGD

**WHITE WINSTON SELECT ASSET FUNDS, LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

White Winston Select Asset Funds, LLC ("White Winston") hereby submits its Supplemental Memorandum in further support of its Motion to Dismiss the Second Amended Complaint filed by Plaintiffs Grant Armstrong and Armstrong RX GP, LLC ("Plaintiffs").[1] For the reasons set forth herein, in addition to those set forth in its Motion to Dismiss and in its

---

[1] At the April 13, 2017 hearing on Plaintiffs' Motion for Leave to File a Second Amended Complaint, the Court suggested, and the parties' respective counsel agreed, that it would allow Plaintiffs' Motion for Leave and treat the Second Amended Complaint as the operative complaint, while at the same time treating Defendant's Motion to Dismiss the First Amended Complaint (Dkt. Nos. 37 and 38)("Motion to Dismiss") and Defendant's Opposition to Plaintiffs' Motion for Leave (Dkt. No. 61)("Opposition") as a consolidated Motion to Dismiss the Second Amended Complaint. The Court further agreed that White Winston could submit a Supplemental Memorandum in support of this new Motion to Dismiss the Second Amended Complaint, and that Plaintiffs could file a response thereafter.

Opposition, White Winston respectfully requests that Counts II-XV of Plaintiffs' Second Amended Complaint be dismissed with prejudice.

I.  **PLAINTIFFS RELEASED WHITE WINSTON FROM ALL KNOWN AND UNKNOWN CLAIMS RELATING TO THE DALLAS LOAN TRANSACTION IN SEPTEMBER 2014.**

In September 2014, Plaintiffs executed a document entitled "Release of Lien and Limited Guaranties" in connection with their efforts to refinance their existing White Winston debt on the Plano Pharmacy ("Release of Lien").[2]  The purpose of the Release of Lien was for White Winston to release certain liens it held against the Plano pharmacy and its assets, and to release Armstrong RX GP, LLC from liability under certain limited guaranties that it executed in connection with the Plano and Dallas loan transactions, so that Armstrong could refinance his Plano debt with a third party.  In return, and as consideration for the Release of Lien, Plaintiffs represented and warranted that they had no existing claims against White Winston and expressly released White Winston from any and all claims they had, or may have had, arising out of or in any way related to the Plano and Dallas loan transactions.  Much like the other documents executed by the parties in connection with the two loan transactions, the Release of Lien was a fully integrated agreement,[3] and was negotiated at arms-length by sophisticated parties with the

---

[2] The Release of Lien, dated September 2, 2014, is executed by Plaintiff Grant Armstrong, both individually and in his capacity as Sole Manager of Plaintiff Armstrong RX GP, LLC.  A copy of the Plano Release is already part of the record before this Court, as Exhibit 10 to the Motion to Dismiss.  *See* Dkt. No. 38-10.  In the Release of Lien, the term "Plano Borrowers" is sued to identify (and is defined as) Armstrong and Armstrong RX GP, LLC, the Plaintiffs in this action.

[3] Section 6 of the Release of Lien, entitled "<u>Entire Agreement</u>," states "[t]his Agreement constitutes the entire agreement and understanding between the parties hereto with respect to all matters discussed herein, and supersedes all prior negotiations, representations, agreements, and understandings relating to the subject matter hereof, whether written or oral." *See* Dkt. No. 38-10, §6.

benefit of competent counsel.[4] The release provision of the contract was a material component of White Winston's agreement to release its liens on the Plano assets.

The pertinent release language is set forth in Section 4.  *See* Dkt. No. 38-10, §4.  In the first part of Section 4, Plaintiffs (a/k/a the "Plano Borrowers") expressly state and agree that they have no present claims against White Winston with respect to the Plano loan transaction.  *Id.*  In the second part of Section 4, Plaintiffs state and agree to waive, release and discharge any and all claims against White Winston arising from either the Plano loan transaction or the Dallas loan transaction.  *Id.*  The relevant release language of Section 4 states:

> … Therefore, on their own behalf and on behalf of each of their respective successors and assigns, the [Plaintiffs] hereby waive, release and discharge [White Winston] and all of its members, managers, directors, officers, employees, attorneys and agents, from any and all claims, demands, actions or causes of action arising out of or [in] any way relating to the Plano Loan Agreement, the Guaranties,[5] and any documents, instruments, agreements (including this Agreement), dealings or other matters connected with the Plano Loan Agreement and the Guaranties, including, without limitation, all known and unknown matters, claims, transactions or things occurring on or prior to the date of this Agreement. The waivers, releases and discharges in this Section shall be effective regardless of any other event that may occur or not occur on or after the date hereof.  *See* Dkt. No. 38-10, §4.

---

[4] Section 7 of the Release of Lien, entitled "<u>No Coercion or Duress</u>," states that the parties thereto "jointly and severally, hereby represent and warrant to the Lender:  (a) that they are fully aware of the terms set forth in this Agreement and have voluntarily, and without coercion or duress of any kind, entered into this Agreement intending to be legally bound by its terms; (b) that in executing this Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice or recommendations of their own independently chosen counsel, considering the nature, extent, and duration of their rights and claims hereunder; and (c) that they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by the Lender or any persons representing the Lender, except express representations set forth in this Agreement.  *See* Dkt. No. 38-10, §7.

[5] The term "Guaranties" is expressly defined to include both the January 23, 2014 Guaranty executed by Armstrong RX GP, LLC in connection with the Plano loan transaction ("Plano Guaranty"), and the May 29, 2014 Limited Guaranty executed by Armstrong RX GP, LLC in connection with the Dallas loan transaction ("Dallas Guaranty").  *See* Dkt. No. 38-10, §4.

3

ME1 24680393v.1

Focusing on the Dallas loan transaction at issue in this case, the foregoing language states in plain and unambiguous terms that the Plaintiffs expressly waive, release and discharge White Winston from (i) any and all claims arising specifically out of or in any way relating to the Dallas Guaranty, as well as (ii) any and all claims arising from or related to documents, instruments, agreements, dealings or other matters connected to the Dallas Guaranty, including all known and unknown matters, claims, transactions or things occurring prior to the date of the Release of Lien. *Id.* There can be no question all of the documents that were part of the Dallas loan transaction were "connected to" the Dallas Guaranty. Accordingly, the Release of Lien plainly expresses the parties' intent that the Section 4 release language covers any and all claims arising from or connected to the Dallas loan transaction.

The Dallas Guaranty was not a stand-alone agreement. It was one of several documents comprising the Dallas loan transaction. Indeed, Paragraph 1 (of the "Background" section) of the Release of Lien states that Plaintiffs delivered the Dallas Guaranty on May 29, 2014 "in conjunction with a certain loan transaction by and between [White Winston] and Dallas Borrowers." *See* Dkt. No. 38-10, ¶1. The Dallas loan transaction included several documents in addition to the Dallas Guaranty, including the Loan Agreement, Revolving Line of Credit Note, Partnership Interest Purchase Agreement between Armstrong and QVL, Armstrong's Limited Guaranty, a Physician Relationship Manager Side Agreement, and a Deposit Account Control Agreement. All of these documents are "connected to" the Dallas Guaranty, as they were all executed contemporaneously as part of a single lending transaction. *See Kerr v. Vince*, 2010 WL 1416511, at *22 (D. Mass. Apr. 1, 2010) (under Massachusetts law, "when several writings evidence a single contract or comprise constituent parts of a single transaction, they will be read together."); *Matthews v. Planning Bd. of Brewster*, 72 Mass. App. Ct. 456, 463 (2008)

(interlocking documents that are part of a single transaction and are interrelated in purpose must be read together to effectuate the intention of the parties). Moreover, any claims or defenses relating to the Dallas Guaranty would apply equally to the other documents comprising the Dallas loan transaction.[6] For this reason, Section 4 states that Plaintiffs release White Winston, not only from all claims related to the Dallas Guaranty, but also from those arising from or related to "documents, instruments, agreements, dealings or other matters connected with" the Dallas Guaranty. *See* Dkt. No. 38-10, §4. Accordingly, when Plaintiffs executed the Release of Lien, they released any and all claims arising from the Dallas Guaranty and from each and every other document executed as part of the Dallas loan transaction. *See* Dkt. No. 38-10, §4. This release discharges White Winston from liability from all of the claims set forth in Counts II–XV of the Second Amended Complaint, which should be dismissed.

Plaintiffs cannot attack the validity or enforceability of the Release of Lien (as they previously have attempted to do with other agreements between the parties). Indeed, Plaintiffs have affirmatively pled the existence and enforceability of the Release of Lien in their Second Amended Complaint, specifically alleging that "White Winston released the [Dallas Guaranty] by written agreement dated September 2, 2014" in connection with Plaintiffs' refinance and payoff of the Plano loan. *See* Dkt. No. 73, ¶42. Having done so, Plaintiffs cannot now avoid the release language contained in that same agreement.[7] *See, e.g., Crocker v. Townsend Oil Co., Inc.*,

---

[6] For example, Plaintiffs' claims that they were fraudulently induced into entering into the Dallas Loan transaction relate no more, or less, to any one Dallas loan document than they do to any other.

[7] Armstrong, through the third-party defendant entities Armstrong RX II GP, LLC and Armstrong RX II LP ("Third-Party Defendants") also conceded the existence, validity and enforceability of the Release of Lien in the Answer to White Winston's Third-Party Complaint. Specifically, the Third-Party Complaint alleges that "[a]s additional security for the Loan, another entity controlled by Armstrong, Armstrong RX GL [sic], LLC ("AGP"), also executed a Limited Guaranty ("AGP Limited Guaranty"), dated May 29, 2014. The AGP Limited Guaranty,

438 Mass. 592 (2003) (longstanding rule is that a general release of all demands embraces everything included within its terms and is binding and enforceable); *Cormier v. Central Mass. Chapter of National Safety Council*, 416 Mass. 286, 288 (1993) (courts will enforce general release releasing all claims of whatever nature that one party may have against another as of the date of release). Accordingly, Plaintiffs are prevented from arguing that the Release of Lien is an unenforceable agreement.

Plaintiffs also cannot argue that the scope of the release is limited to the Plano loan transaction.[8] Such a narrow (and self-serving) construction is not only contrary to the plain language of the release itself, but it also would improperly render meaningless specific language of the provision. *See Baybank Middlesex v. 1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991) (a contract must be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose; a contract must not, whenever possible, be construed so as to render any of its terms meaningless); *OfficeMax, Inc. v. Levesque*, 658 F.3d 94, 98 (1st Cir. 2011) (injunction vacated as the district court's interpretation had read a clause out of the contract, in contravention of the fundamental principle of contract interpretation that "a contract should be construed to give force and effect to all of its provisions and not in a way that renders any of its provisions meaningless").

---

however, was released by White Winston by written agreement dated September 2, 2014." *See* Dkt. No. 17, p. 8, Section C, note 1. The Third-Party Defendants, in their answer, "admit the allegations contained in footnote 1 to this section title in the Third-Party Complaint, including but not limited to the allegation that White Winston released the [AGP Limited Guaranty] dated May 29, 2014 and executed by Armstrong RX GL [sic], LLC, by written agreement dated September 4, 2014." *See* Dkt. No. 22, p. 4, Section C, note 2. The "AGP Limited Guaranty" referenced therein is the Dallas Guaranty.

[8] Indeed, this is not the first instance where Plaintiffs released White Winston from any and all claims arising out of the Dallas transaction. The first occasion, as fully briefed in the Motion to Dismiss, was in the First Amendment to Loan Agreement and Secured Promissory Notes on June 13, 2014. *See* Dkt. No. 37, p. 18, Exhibit 8.

For example, had the parties intended the release language to apply only to claims arising out of the Plano loan transaction, they would have said so, and would not have included the language releasing all claims arising from the Dallas Guaranty "and any documents, instruments, agreements (including this Agreement), dealings or other matters connected with the" Dallas Guaranty.  Moreover, such a strained and narrow construction would render meaningless the language "and any documents, instruments, agreements (including this Agreement), dealings or other matters connected with the" Dallas Guaranty.  *See Baybank Middlesex,* 760 F. Supp. at 963.  Yet further, if the release only applied to the Plano loan transaction, then Section 5 would be unnecessary, as the purpose of Section 5 is to reaffirm that other obligations of the "Dallas Borrowers" (including their repayment obligations) survive and are not affected by the release language, even though Plaintiffs had released White Winston from all claims connected to the Dallas loan transaction.

Because the Release of Lien is valid and enforceable (as Plaintiffs admit), it should be enforced according to the plain meaning of its clear and unambiguous terms.  *See Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 784 (1st Cir. 2011) (unambiguous contract language must be interpreted according to its plain terms).  Counts II–XV of the Second Amended Complaint should therefore be dismissed.

## II. WHITE WINSTON IS ENTITLED TO DISMISSAL OF COUNTS II-XV OF THE SECOND AMENDED COMPLAINT FOR ALL OF THE REASONS STATED IN THE MOTION TO DISMISS AND THE OPPOSITION

For ease of reference, the following section provides a summary of the arguments presented in the Motion to Dismiss and the Opposition, each of which (in addition to the argument set forth above) requires the dismissal of one or more of the claims set forth in the Second Amended Complaint.

### A. All Fraud-Based Claims Should Be Dismissed

**COUNT II (Fraudulent Inducement of Armstrong Guaranty)**
**COUNT IV (Fraudulent Inducement of the Dallas Loan)**
**COUNT V (Fraudulent Inducement of the PIPA)**
**COUNT VI (Fraudulent Inducement of the TSA)**
**COUNT X (Fraudulent Misrepresentations)**
**COUNT XII (Violation of Chapter 93A)**

All of the fraud-based claims should be dismissed as they are not actionable for at least one of the following reasons: (1) the affirmative misrepresentations pleaded are not actionable because they are contradicted by clear and unambiguous contract terms, rendering any purported reliance on them unreasonable as a matter of law; (2) the existence of a valid and enforceable integration clause in the Dallas Loan bars any misrepresentation claim; (3) Plaintiffs ratified the Dallas loan documents by their conduct throughout the course of the loan; and (4) Plaintiffs released all claims by signing the June 2014 Amended Note.

Furthermore, as detailed in the Opposition: (1) White Winston cannot be liable for representations it did not make, (they were made by QVL, a third party) in a contract to which it is not a party (the Partnership Interest Purchase Agreement), as Plaintiffs do not allege any legal theory by which White Winston could be held for such statements; and (2) White Winston cannot be liable for misrepresentations by omission, as no fiduciary or other duty existed at any relevant time that would have obligated White Winston to disclose the information about which Plaintiffs now complain.[9]

---

[9] As argued at the hearing on Plaintiffs' Motion for Leave, Plaintiffs' claim of misrepresentation by omission, alleging that White Winston failed to disclose certain information to induce Plaintiffs into the Dallas loan transaction, is wholly without merit. The sole basis for Plaintiffs' position is that White Winston possessed and exerted such control over Plaintiffs' Dallas lockbox account (as opposed to the QVL lockbox account) that it elevated White Winston to the status of a fiduciary, thereby giving rise to a legal obligation to disclose this information to Plaintiffs. This argument, however, has no merit whatsoever, as Plaintiffs allege that this failure

**B.   Claims For Breach Of Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed**

**COUNT VII (Breach of Implied Covenant – PIPA)**
**COUNT VIII (Breach of Implied Covenant – Dallas Loan)**

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing should be dismissed on the grounds that: (1) White Winston is not a party to the PIPA and cannot be liable as a matter of law for breach of the implied covenant; (2) Plaintiffs' breach of implied covenant claim on the Dallas Loan is based on the same factual predicate as their fraud-based claims, which are not actionable, and (3) Plaintiffs released all claims by signing the June 2014 Amended Note.

**C.   Claims for Tortious Interference With Contract Should Be Dismissed**

**COUNT XIII (Interference with TSA)**
**COUNT XIV (Interference with Side Agreement)**

Plaintiffs' claims for tortious interference with contract should be dismissed on the grounds that: (1) Plaintiffs released all claims by signing the June 2014 Amended Note; and (2) White Winston's alleged conduct was justified as it was specifically permitted by the clear and unambiguous terms of the Loan Agreement that Armstrong freely and voluntarily executed in May 2014.

**D.   Claim for Breach of Dallas Loan Should Be Dismissed (COUNT IX)**

Plaintiffs' claims for breach of the Dallas Loan Agreement should be dismissed because Plaintiffs released all claims related to the Loan Agreement when they signed the June 2014 Amended Note.

---

occurred ***prior to the closing of the loan transaction***, at a time when neither a borrower/lender relationship, nor a Dallas pharmacy lockbox, even existed.  Accordingly, White Winston's control over the Plaintiffs' Dallas lockbox could not have given rise to a fiduciary, or any other, duty.

ME1 24680393v.1

### E. Claim for Breach of Fiduciary Duty Should Be Dismissed (COUNT XI)

Plaintiffs' claims for breach of fiduciary duty should be dismissed for one or more of the following reasons: (1) Plaintiffs released all claims by signing the June 2014 Amended Note; and (2) White Winston owed no fiduciary duty to Plaintiffs at any relevant time, as a matter of law.

### F. Claim for Accounting, As Pled, Should Be Dismissed (COUNT XV)

To the extent Plaintiffs seek an accounting of bank accounts under the control of QVL, who is not a party to this case, that Count must be dismissed as White Winston does not have the authority or ability to provide any such accounting.

### CONCLUSION

For the reasons set forth herein, White Winston respectfully requests that Claims II–XV of the Second Amended Complaint be dismissed with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*WHITE WINSTON SELECT ASSET FUNDS, LLC,*

By its attorneys,

/s/ David M. Ianelli
David M. Ianelli, BBO # 567274
dianelli@mccarter.com
Nicholas Allen, BBO # 663409
nallen@mccarter.com
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, MA  02110
617-449-6500

April 27, 2017

## CERTIFICATE OF SERVICE

  I, David M. Ianelli, certify that on this 27th day of April, 2017, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

            */s/ David M. Ianelli*
            David M. Ianelli