**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GRANT ARMSTRONG & ARMSTRONG RX GP, LLC,<br><br>Plaintiffs,<br>v.<br><br>WHITE WINSTON SELECT ASSET FUNDS, LLC,<br><br>Defendant/Third Party Plaintiff,<br>v.<br><br>ARMSTRONG RX II GP, LLC & ARMSTRONG RX II, LP,<br><br>Third-Party Defendants. | ) | Case No. 1:16-CV-10666-JGD |

**[~~PROPOSED~~] ORDER AND DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION**

Plaintiffs Grant Armstrong and Armstrong RX GP, LLC ("Plaintiffs"), Defendant and Third Party Plaintiff White Winston Select Asset Funds, LLC ("Defendant"), and Third Party Defendants Armstrong RX II GP, LLC and Armstrong RX II, LP ("Third Party Defendants"), (hereafter collectively referred to as the "Parties" and each individually a "Party"), by and through their respective attorneys, hereby agree and stipulate to the following:

1. Electronically stored information ("ESI") will be part of the discoverable material in this case and the Parties agree cooperatively to exchange discoverable ESI and use reasonable, good faith efforts to identify, preserve, collect, review, and produce non-privileged ESI and other documents that are relevant to a Party's claims or defenses and which are proportional to the needs of this case under Fed. R. Civ. P. 26(b)(1). Consistent with the Court's directive during a hearing on April 13, 2017, the Court's April 14, 2017 Scheduling Order, and the Federal Rules of Civil Procedure, the Parties shall proceed with fact discovery, including the production of ESI and hard copy documents on a rolling basis. If necessary, the Parties shall notify the Court when they are approaching the end of document production relating to issues that are not subject to White Winston's motion to dismiss the Second Amended Complaint. A Party may withhold ESI if the ESI relates solely to issues related to White Winston's Motion to

Dismiss the Second Amended Complaint (and not the Count One of the Second Amended Complaint and not counterclaims and/or third-party claims asserted by White Winston) and, if a Party withholds portions of discoverable ESI based on such a good faith objection pursuant to Rules 26 and 34 of the Civil Rules of Procedure, the Party withholding such ESI shall identify such withheld ESI to the other Party. The Court reserves jurisdiction to hear and determine any disputes related to such objections and/or the production of ESI.

2. The Parties agree to meet and confer about, reasonable discovery questions under Fed. R. Civ. P. 26(f), including the preservation of discoverable ESI, the development of a joint proposed discovery plan, the subjects and locations on and in which discovery may be needed, the timing of discovery and any questions about ESI and the form in which it should be produced. If the Parties are unable to resolve any dispute about the scope and/or production of discoverable ESI, the Parties agree to file a Joint Status Report with the Court, where each side briefly articulates its position, and request that the Court schedule a telephonic or in-person Status Conference to assist the Parties in resolving the dispute.

**Sources and Limitations on ESI**

3. Absent a showing of good cause by the requesting Party, the Parties shall not modify, on a going forward basis, their internal procedures used by them in the ordinary course of business to backup, archive, store, or manage information systems and ESI, except that the Parties will modify procedures and take all reasonable and proportional steps necessary to preserve non-duplicative discoverable ESI currently in their possession, custody, or control.

4. The Parties recognize their mutual obligation to take reasonable and proportional steps to identify and preserve discoverable information within a Party's possession, custody, and control, and they agree to identify and preserve ESI only from the following data sources: email systems, PC/laptop hard drives, file servers, document management systems, and mobile devices used during the period of 2014 and 2015 by Todd M. Enright and Grant W. Armstrong.

5. Each Party shall take reasonable steps to ensure that relevant ESI of identified custodians, that existed on or after December 8, 2015, shall not be permanently deleted in the ordinary course of business, and that all such relevant ESI maintained by individual custodians shall not be altered.

6. Absent agreement or a showing of good cause, the following categories of ESI need not be collected and are considered inaccessible due to an undue burden and expense or because the information is more reasonably available elsewhere:

    a. Unallocated, slack space, deleted data, file fragments, or other data accessible by the use of computer forensics;

    b. Random access memory (RAM), temporary files, or other difficult-to-preserve data;

    c. Data concerning online access, such as temporary Internet files, browser history, file or memory caches and cookies;

    d. Data in metadata fields that are frequently updated automatically as part of the usual operation of a software application, operating system, or network (e.g., date last accessed or printed);

    e. Backup or archived data that is substantially duplicative of data that is more reasonably accessible elsewhere;

    f. Telephone or VOIP voice messages, unless saved or attached to email communication;

    g. Instant messages, pin-to-pin, and other electronic text messages sent to and from mobile devices or smartphones that are not regularly stored or saved on a server dedicated to storing such data (except for such materials located on mobile devices used during the period of 2014 and 2015 by Todd M. Enright and Grant W. Armstrong);

    h. Other data stored on mobile or handheld devices or smartphones, such as calendars, tasks, call logs, photographs, contacts or notes, provided that copies of such information is routinely saved or stored elsewhere (except for mobile devices used during the period of 2014 and 2015 by Todd M. Enright and Grant W. Armstrong;

    i. Operating system files, executable files, network, server, or system logs; or

    j. Data from systems that are no longer in use that is unreadable or unintelligible on current systems.

7. The Parties agree that the following individuals shall have their mobile or handheld device from the calendar years 2014 and 2015 available for searching and collection of ESI:
    a. Todd M. Enright
    b. Grant W. Armstrong

This paragraph does not limit the ability of any party to seek or to obtain discoverable information or materials from mobile or handheld devices of any other person or non-party, if necessary, and at the requesting party's cost and expense.

**General Production Format**

8. The Parties will produce ESI in single-page TIFF image format provided that the documents do not become illegible or unusable when converted to TIFF image format. Documents that become illegible or unusable when converted to TIFF image format (e.g., MS Excel files) will be produced in native format. The Parties reserve their respective rights to seek additional electronic documents in their native format for good cause shown.

9. Documents originating in paper form will be scanned to TIFF image format at 300 DPI and undergo Optical Character Recognition (OCR). These documents will be produced in single-page TIFF image format, as indicated below, together with document-level OCR text files. Paper documents will be logically unitized to reflect original document boundaries for each document.

10. All ESI and documents will be produced with image load files, the data fields provided in Table 1, attached and as applicable, and either extracted text or text generated using OCR that render documents searchable. In those instances where redaction is used, OCR text will be provided in lieu of the extracted text to allow for removal of the redacted text from production. For documents produced in native format, in addition to producing extracted text and the relevant data fields in Table 1, the producing Party will supply the TIFF-image slip sheets endorsed with the production number and level of confidentiality assigned under any applicable protective order in this case.

11. Where applicable, ESI will be processed and produced with all hidden text (e.g., track changes, speaker's notes, hidden rows or columns, comments, notes, written marks or words) and formulas exposed, expanded and extracted and rendered in the TIFF image, provided that such data does not constitute attorney-client privileged or work product materials.

12. ESI and documents originally in paper form shall be produced and identified as kept in the usual course of business. A producing Party need not include in its production any indication of the document request(s) to which a document may be responsive.

13. Images, native files, metadata and text files to be produced will be delivered on or via appropriate media, and they will be organized in separate folders named "Images," "Native," "Data," and "Text."

14. Documents that are converted to TIFF image format will be produced in accordance with the following technical specifications:

   a. Single-page, 1-bit, group IV TIFF image files at 300 dpi, with color images in single-page JPEG format;

   b. Bates numbers should be endorsed on the lower right hand corner of all TIFF images and will be a unique, consistently formatted identifier;

    c. Confidential designations, if any, will be endorsed on the lower left corner of all TIFF images;

    d. Presentations, including Power Point slides, should be rendered to TIFF in "notes" format to include the full slide image together with any speaker notes following the slide image; and

    e. TIFF images will be produced with a comma delimited image load file in the .OPT format.

**Metadata Format**

15. Extracted metadata, including the data fields listed in Table 1, will be produced in a delimited data file in accordance with the following technical specifications:

    a. The first line of the data file must be a header row identifying the field names;

    b. Date fields in the data file will be provided in the MM/DD/YYYY format;

    c. All attachments should sequentially follow the parent document or email and include data fields identifying documents as "parent" documents or "attachments" with appropriate group identifiers;

    d. The fields of data to be produced are listed in Table 1, attached; and

    e. The data file for scanned paper documents will, at a minimum, contain the BATESSTART, BATESSTOP, CUSTODIAN, and TEXT fields.

**Searchable Text**

16. Searchable text of the entire documents will be produced either as extracted text for all documents that originate in electronic format or, for paper documents and from which text cannot be extracted, as text generated using OCR technology. For redacted documents, the text of the redacted version of the document will be produced.

17. Searchable text will be produced as a document-level multi-page ASCII text file with the text file named the same as the BATESSTART field in the data file. Text files will be placed in a separate directory for production.

**Native Files**

18. Native file documents, emails, or attachments that are included in any production will be produced under the following criteria:

a. Documents produced in the native file format will have the file name named the same as the BATESSTART number;

b. The full path of the native file will be provided in the data file for the NATIVE_FILE field;

c. When the native files are produced because rendering the file to TIFF would not result in a viewable image, a TIFF image slip sheet placeholder will be produced with the file name and the legend: "Produced in Native Format;" and

d. The confidentiality designation applied to any document under a protective order entered in this action will be produced in the load file in the DESIGNATION field.

A receiving party may request that a document produced as a TIFF image be produced in native format if the receiving party can show good cause for a specific electronic document in its native format.

In the event that a party believes a particular category of documents should be produced in native format, it shall make a request to the opposing party. If there is an objection, the parties will meet and confer no later than five business (5) days after the request is made. If the parties continue to disagree, the matter may be raised with the Court.

**Deduplication**

19. A producing Party may deduplicate documents prior to production. Duplicate documents may be withheld from production provided deduplication is performed as follows:

    a. As to email that remains in electronic form and has not been printed, they will be considered duplicates if (i) the hash values of two or more emails are identical; and (ii) the body or text of the email is exactly the same.

    b. For non-email electronic documents, they will be considered duplicates if they have the same hash value.

20. Should a producing Party deduplicate any documents in accordance with the procedure outlined above, the Parties waive any objection as to the authenticity of the version of the document produced and the fields of data associated with such copy.

21. For good cause shown, the receiving Party shall have the right to request all duplicates of a produced document.

**Keyword Searching**

22. Without restricting the rights or obligations of either Party to seek and respond to discovery under the Federal Rules of Civil Procedure by category or in non-electronic

form, the Parties agree that Table 2, setting forth both ESI custodians and search terms, provides the protocol for searching for responsive, non-privileged ESI. Because keyword searching will be used to identify documents responsive to requests for the production of documents, the Parties agree cooperatively and promptly to develop, exchange, and agree upon a list of appropriate keyword search terms to be used to conduct searches for potentially responsive ESI. The Parties agree further that the list of custodians and search terms identified in Table 2 may be subsequently modified by Stipulation of the Parties. Each Party expressly reserves the right to seek discovery of further documents or ESI by category and not be limited to ESI search terms and ESI custodians that are reasonable and proportional to the needs of the case.

23. The Parties agree that, reasonably promptly after the Court's endorsement of the Proposed Order and Discovery Plan for Electronically Stored Information, the Parties will begin the process of keyword searching in accordance with Table 2 to extract and collect discoverable ESI and, consistent with the Court's directive during a hearing on April 13, 2017, the Court's April 14, 2007 Scheduling Order, and the Federal Rules of Civil Procedure, the Parties shall proceed with fact discovery, including the production of ESI and hard copy documents, on a rolling basis. A Party may withhold ESI if the ESI relates solely to issues related to White Winston's Motion to Dismiss the Second Amended Complaint (and not the Count One of the Second Amended Complaint and not counterclaims and/or third-party claims asserted by White Winston) and, if a Party withholds portions of discoverable ESI based on such a good faith objection pursuant to Rules 26 and 34 of the Civil Rules of Procedure, the Party withholding such ESI shall identify such withheld ESI to the other Party. The Court reserves jurisdiction to hear and determine any disputes related to such objections and/or the production of ESI.

**Privileged Documents and Logs**

24. Nothing herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and privilege or work product before production.

25. The Parties agree to confer on the nature and scope of privilege logs, as reasonably necessary, including whether categories of information may be excluded from such logs and whether alternatives to document-by-document privilege logs can be exchanged. The Parties may agree to alter the nature and scope of privilege logs in the following ways, among others:

    a. The Parties are not required to include in their privilege logs any documents or ESI generated after the filing of the complaint;

    b. Activities undertaken and information gathered in compliance with the duty to preserve discovery material are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B);

    c. For email threaded conversations, the Parties are required to log only the most recent, most inclusive email;

    d. The Parties may log documents by category rather than by individual entries for each document. This process does not relieve a Party from making the necessary determination on a document-by-document basis; and

    e. The Parties agree that the production of such logs will occur within a reasonable period of time after a document production.

**Inadvertent Production and Clawback**

26. If a producing Party inadvertently produces to a receiving Party (1) any information or document without designating it as confidential as required, or, (2) any information or document that is privileged or otherwise immune from discovery under the attorney-client or work product doctrines, the receiving Party shall, at the request of the producing Party, immediately return all such inadvertently produced information and documents to the producing Party, including the actual production media used, and confirm in writing that all copies of the confidential, privileged, or work product materials have been destroyed or that the receiving Party did not make any copies of the confidential or privileged materials.

27. The producing Party will prepare and deliver a replacement disk or set containing correct confidentiality designations of all non-privileged documents that were contained in the original production. Electronic copies of the inadvertently produced documents must be removed from the electronic system of the receiving Party.

28. Under Fed. R. Evid. 502, the inadvertent production of undesignated confidential information or documents, or information or documents that are privileged or otherwise immune from discovery under the attorney-client or work product doctrines, shall not be deemed a waiver, in whole or in part, of the producing Party's claim of restriction or privilege either as to specific information disclosed or information on the same or related subject matter.

29. The return or destruction of inadvertently produced privileged documents does not preclude the receiving Party from disagreeing with the designation of any portion of a document as privileged and bringing a motion to compel its production. The procedure for resolution of such disputes is set forth in the Paragraph 7 of the Parties' Stipulated Protective Order. But the substance of any such inadvertently produced privileged document shall not be referenced publicly in the motion or memorandum, or attached as an exhibit, except to the extent that such substance is provided in a privilege log.

30. The Parties agree to meet and confer promptly and in good faith as to any discovery dispute concerning ESI and documents prior to bringing any such dispute to the attention of the court.

31. This Stipulation relates solely to the protocol for identifying, preserving, collecting, reviewing, and producing ESI and documents in this case. Any Party may bring a motion to modify or clarify the application of this Stipulation.

32. This Stipulation, if approved by this Court, will be adopted and enter as an Order of this Court in this action.

Judith Dein 5/23/17
Dein, J., USMJ

DAVIS MALM & D'AGOSTINE, P.C.

s/s Patrick T. Clendenen
Patrick T. Clendenen (BBO #564165)
Robert M. Kaitz (BBO #681917)
One Boston Place
Boston, MA 02108
617-367-2500 (telephone)
617-523-6215 (facsimile)
pclendenen@davismalm.com

**For Grant Armstrong; Armstrong RX GP, LLC; Armstrong RX II GP, LLC; and Armstrong RX II, LP.**

MCCARTER & ENGLISH, LLP

s/s Nicholas Allen
David M. Ianelli (BBO #567274)
Nicholas Allen (BBO #663409)
265 Franklin Street
Boston, MA 02110
617-449-6500 (telephone)
nallen@mccarter.com

**For White Winston Select Asset Funds, LLC**

**Table 1: Armstrong et al. v. White Winston Select Asset Funds, LLC et al., No. 1:16-CV-10666-MLW**

| Order | Alias Field Name | VP Field(s) | Format | Propagate to Children | Stand Alone | Description |
|---|---|---|---|---|---|---|
| 1 | ProdBeg | ProdBeg | Text | NO | YES | Populated with production Bates information once exported |
| 2 | ProdEnd | ProdEnd | Text | NO | YES | Populated with production Bates information once exported |
| 3 | ProdBegAttach | ProdBegAttach | Text | YES | NO | Populated with production Bates information once exported |
| 4 | ProdEndAttach | ProdEndAttach | Text | YES | NO | Populated with production Bates information once exported |
| 5 | PageCount | TiffPages | Whole Number | NO | YES | Document Image Count |
| 6 | Custodian | Custodian | Text | YES | NO | Custodian as identifed at the time of collection, listed as First Name <space> Last Name |
| 7 | ParentDate | ParentDate | Date (MM/DD/YYYY) | YES | NO | The date of a parent document |
| 8 | SentDate | Sent Date | Date (MM/DD/YYYY) | NO | YES | The date an email was sent |
| 9 | SentTime | Sent Time | Time (HH:MM:SS 24-Hour) | NO | YES | The time an email was sent |
| 10 | ReceivedDate | Received Date | Date (MM/DD/YYYY) | NO | YES | The Date an email was received |
| 11 | ReceivedTime | Received Time | Time (HH:MM:SS 24-Hour) | NO | YES | The Time an email was received |
| 12 | CreateDate | Created Date | Date (MM/DD/YYYY) | NO | YES | The date a document was created |
| 13 | CreateTime | Created Time | Time (HH:MM:SS 24-Hour) | NO | YES | The Time a document was created |
| 14 | LastModDate | Modified Date | Date (MM/DD/YYYY) | NO | YES | The date a document was last modified |
| 15 | LastModTime | Modified Time | Time (HH:MM:SS 24-Hour) | NO | YES | The time a document was last modified |
| 16 | Author | Author | Text | NO | YES | The display name of the author, or the author metadata in the case of e-files, of a document |
| 17 | From | Sender | Text | NO | YES | The display name of email sender |
| 18 | To | To | Text | NO | YES | The display name of the recipient(s) of a document |
| 19 | CC | CC | Text | NO | YES | The display name of the copyee(s) of a document |
| 20 | BCC | BCC | Text | NO | YES | The display name of the blind copyee(s) of a document |
| 21 | Subject | Email Subject | Text | NO | YES | The subject of an e-mail, or the metadata entered manually in Subject field by author(s) or by preference setting in an e-file properties |
| 22 | FileName | Doc Title | Text | NO | YES | File Name of a document |
| 23 | FileType | File Desciption | Text | NO | YES | File Type or application that created file |
| 24 | FilePath | Directory Path | Text | NO | YES | The original full path to a document |
| 25 | MD5HASH | Hashcode | Text | NO | YES | MD5Hash of a document |
| 26 | MessageID | Message ID | Text | NO | YES | Outlook Message ID of email |
| 27 | Dupe Custodian | Dedupe Custodians | Text | NO | YES | All custodians with that file, including the initial custodian. |
| 28 | NativePath | N/A | Text | NO | YES | Link to document native file |
| 29 | TextPath | N/A | Text | NO | YES | Link to document text file |

**TABLE 2 FOR [PROPOSED] ORDER AND DISCOVERY PLAN FOR ELECTRONICALLY STORED INFORMATION (ESI)**

*Armstrong et al. v. White Winston Select Asset Funds, LLC, et al., No. 1:16-CV-10666-MLW*

## I. ESI Search Terms (not case sensitive)

a. Date Range Restriction: January 1, 2014 to December 31, 2015

b. Search Terms from Plaintiffs/Third Party Defendants to be run by White Winston:

i. ((QVL OR QVL /5 145) AND (Grant /2 Armstrong OR Grant OR Armstrong OR "Armstrong RX GP"))

ii. ((QVL OR QVL /5 142) AND (Grant /2 Armstrong OR Grant OR Armstrong OR "Armstrong RX II"))

iii. ((QVL /5 145 OR QVL /5 142) AND ("White Winston" OR "White Winston Select Asset Fund*" OR "WW"))

iv. (("Loan Agreement" OR Loan /2 Agreement) AND (Grant /2 Armstrong OR Grant OR Armstrong OR "Armstrong RX GP" OR "Armstrong RX II"))

v. ((Enright OR White Winston email addresses) AND ((QVL /5 145 OR 142) OR Grant /2 Armstrong OR Grant OR Armstrong OR "Armstrong RX GP" OR "Armstrong RX II"))

vi. Grant /2 Armstrong OR Armstrong OR "Armstrong RX GP"

vii. ((QVL OR (QVL /5 145 OR 142)) OR (Grant /2 Armstrong OR Grant OR Armstrong OR "Armstrong RX GP" OR "Armstrong RX II") AND ((Drawdown OR "Draw Down" OR Drawdown /2 Request) OR Receivable* OR ("Lock Box account" OR Lock /2 Box OR "Lockbox") OR Default OR (Disclosure* OR Disclosure* /2 Schedule*) OR (Guarant* OR Armstrong /2 Guaranty OR Limited /2 Guaranty) OR (First Amendment OR First /2 Amendment) OR (Collateral OR Collateral /5 Agreement))

viii. ((QVL OR ("White Winston" OR "White Winston Select Asset Fund*" OR "WW")) AND (Amerisource* /2 Drug OR "Amerisource Bergen" OR "ABDC"))

ix. ((QVL OR (QVL /5 145 OR 142)) AND "Transition Services Agreement" OR Transition /2 Agreement)

x. ((QVL OR (QVL /5 145 OR 142)) AND "Deposit Account Control Agreement" OR Deposit /3 Agreement)

xi. ((QVL OR (QVL /5 142)) AND ("Physicians Relationship Manager" OR Physician* /5 Manager OR PRM))

xii. ((QVL OR White /2 Winston) AND (Grant /2 Armstrong OR Grant OR Armstrong) AND ("Closing Statement" OR Closing /2 Statement*))

c. Search Terms from White Winston to be Run by Plaintiffs/Third Party Defendants:

i. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Enright OR Mahoney OR "White Winston" OR "White Winston Select Asset Fund" OR WW OR *whitewinston.com)

ii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Loan OR Loan /2 Agreement)

iii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Guaranty OR Limited/2 Guaranty OR Armstrong /2 Guaranty OR Guarantor)

iv. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Note or "Term Note" OR Promissory/2 Note)

v. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Manny OR Manuel OR Anzaldua)

vi. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR

ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (AR OR A/R OR Account* /2 Receivable OR Receivable*)

vii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND Release

viii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Charmaine OR Gibson)

ix. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Shilah OR Stover)

x. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Amendment OR First /2 Amendment)

xi. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Closing OR Closing /5 Statement)

xii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Lockbox OR Lock /2 Box OR Boston /2 Private)

xiii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Disclosure OR Disclosure /2 Schedule)

xiv. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (LOC OR "Line of Credit" OR "Revolving Line of Credit Note")

xv. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND

    (Transition Services Agreement OR Transition /2 Agreement OR TSA)

xvi. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Deposit Account Control Agreement OR Deposit /5 Agreement OR DACA)

xvii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (PRM OR "Physician Relationship Manager Agreement" OR "Side Agreement" OR Physician /5 Manager OR Manny OR Manuel OR Anzaldua)

xviii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (QVL Subsidiaries Funding Group" OR QVL /2 Subsidiaries /2 Funding OR "Funding Group")

xix. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Intercreditor OR Intercreditor /2 Agreement)

xx. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Collateral OR "ARXII Collateral" Collateral /2 Agreement)

xxi. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Advance OR Request /5 Advance OR Draw OR Drawdown OR Disbursement)

xxii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Aemad OR Aemad /2 Aslam)

xxiii. (Grant OR Armstrong OR Grant/2 Armstrong OR "Armstrong RX GP" OR "Armstrong RX II GP" OR "Armstrong RX II" OR

ARX OR ARXII OR QVL /5 142 OR QVL /5 145) AND (Enright OR "White Winston" OR "White Winston Select Asset Fund" OR WW) AND (Amerisource* /2 Drug OR "Amerisource Bergen" OR ABC OR ABDC)

## II. List of Custodians Under the Control of The Parties

i. Todd Enright, White Winston

ii. Grant Armstrong, Armstrong RX GP

iii. Robert Mahoney, White Winston

iv. Shilah Stover

v. White Winston Partnership Group

1. Mark Blundell
2. Robert Mahoney
3. Don Feagan

vi. Attorney Group

1. Burt Winnick
2. Benjamin Hron
3. David Greenberg

vii. Entity Group

1. KOR, White Winston
2. KOR, Armstrong RX GP, ARMSTRONG RX GP, LLC, ARMSTRONG RX II GP, LLC, and ARMSTRONG RX II, LP
3. KOR for Lilian-White Investment, Board Consulting Group, FWW Holdings, and QVL Subsidiaries Funding Group