# **EXHIBIT G**

# JEFFREY D. STERNKLAR LLC

July 14, 2020

*BY E-MAIL*

Patrick T. Clendenen, Esq. (ptc@clenlaw.com)
Clendenen & Shea
400 Orange Street
New Haven, CT  06511

Re:  <u>Armstrong v. White Winston Select Asset Funds, Inc.</u>

Dear Pat:

Thank you for your July 8, 2020 letter.  I write here in response to that letter.

### A.  *The Court's June 23, 2020 Order*

Your letter begins with a mistaken characterization of the Court's June 23, 2020 order.  You write that "[u]nder the Court's June 23, 2020 Order, Dkt, 162, this letter requests additional information and back up documentation concerning specific transactions into and out of accounts maintained and controlled by White Winston Select Asset Funds, LLC, including the Dallas Location Lock Box Account (No. 9434159421, the QVL Investors Business Trust Account (No. 943390192), the White Winston Select Asset Funds, LLC Operating Account (No. 9434304371), and the White Winston Select Asset Funds, LLC Investment Receipt Trust Account (No. 9434017391."

The Order nowhere authorizes you to request additional information regarding "back up documentation concerning specific transactions into and out of accounts," let alone the accounts you identify in your letter.  Rather, paragraph 1.b. or the Order provides in pertinent part that your clients " may request additional information ***about specific transactions identified in the spreadsheets the defendants recently provided, or seek additional information about a random sample of entries to ensure the data's reliability***." (emphasis added).

The transactions identified in your letter are not "specific transactions identified in the spreadsheets" recently provided to you.  Nor does your letter seek

Patrick T. Clendenen, Esq.
July 14, 2020
Page 2

"additional information about a random sample of entries to ensure the data's reliability." Instead, your letter identifies a series of transactions I do not recall ever seeing, and that are not included on any of the spreadsheets provided to you. Thus my client will not respond the requests you make that are violative of the Court's order. Instead, our responses are limited as set forth below. Please identify the specific transactions appearing in the spreadsheets that correspond to the "sweep" transactions identified in your letter so that I can provide a further response in accordance with the Court's order.

### B. Requested Information Regarding "Sweeps"

Your letter states

First, as you have acknowledged, White Winston 'swept' money from the Dallas lockbox Account to the White Winston Select Asset Funds, LLC Operating Account and the White Winston Select Asset Funds, LLC Investment Receipt Trust Account without applying those 'sweeps' to the line of credit or term note. In acknowledging this fact, you have characterized the 'sweeps' as temporary measures that did not affect the financial reporting or performance of the loans. In fact, however, it appears that White Winston consistently characterized these 'sweeps'- at least $214,000 of which were directed to the White Winston Select Asset Funds, LLC Operating Account -as lender advances throughout the amortization period, thereby increasing the overall line of credit balance.

There are a number of inaccuracies in this statement. First, I do not believe I ever "acknowledged" that White Winston's sweep of funds from the Dallas Lockbox Account had anything to do with the application of receipts into the Lockbox to the loan. Nor did I ever "characterize the sweeps as temporary measures that did not affect the financial reporting or performance of the loan." What is the source of these breathtakingly false averments?

In point of fact, "sweeps" and withdrawals from the Lockbox account are irrelevant. Instead, all receipts into the Lockbox were applied to reduce the loan, as set forth in the amortization spreadsheet I sent to you on September 4, 2018 (another copy attached for your convenience). The timing and amount of "sweeps" had no effect on the loan balance, but the receipt of funds into the Lockbox reduced the outstanding balance on the loan dollar for dollar. The funds received into the Lockbox were applied to the loan at least on a weekly basis (if not more frequently). The application of receipts into the Lockbox reduced the then-outstanding balance of the loan, thereby creating availability for new advances (or reducing the overadvance level) of the loan.

Patrick T. Clendenen, Esq.
July 14, 2020
Page 3

Accordingly, there was no "practice" with regard to sweeps" as you aver in your letter and there are no documents regarding this nonexistent "practice" that you request for my client to produce.

Second, you later state that "[w]hether the third-party withdrawals were properly accounted for in the term and line amortization therefore remains disputed and relevant to Armstrong's claims. Again, this is baffling. I do not know what you mean by "third-party withdrawals" from the Lockbox account. My client, and no third party, executed all withdrawals from the Lockbox account. Separately, to the extent my client advanced additional funds on account of your client's line of credit to pay for drug purchases or other expenses, my client (and not any third party) executed those additional advances, usually upon your client's request. And, as noted, withdrawals from the Lockbox account are a red herring that have nothing to do with the issues in this case.

Third, you state that White Winston characterized certain funds swept from the Dallas Lockbox Account "as lender advances." What is the basis for this averment? Certainly, there are no such "characterizations" in any of the spreadsheets my client provided to you, and we have been unable to find any other document containing these alleged "characterizations." In point of fact, the full amount of additional advances from my client allocable to your client are aggregated and included in the weekly advances reflected on the attached spreadsheet. Thus, my client disputes this averment.

### C. Other Funds Swept From the Lockbox Account

You request multiple additional documents regarding funds allegedly swept from the Lockbox account in connection with certain other alleged "sweeps" identified in your letter, claiming that what happened to the funds after they were "swept" is relevant or properly in dispute. As noted above my client disputes this assertion, because what happened to the funds after they were swept is irrelevant. What is relevant is not what happened to swept funds from the Lockbox account, but instead only whether your client received full credit for all deposits received in the Lockbox – which it did. My client has produced voluminous documents accounting for every penny received into the Lockbox and for which your client received full credit. Thus, your assertion is mistaken.

### D.   What My Client Will Produce

Although not required by the Order to do so, my client nevertheless will search its files for documents regarding the transactions identified in your letter that in fact are advances for which your client is liable (to the extent my client can identify the transactions identified in your letter and they are in fact advances). My client is

Patrick T. Clendenen, Esq.
July 14, 2020
Page 4

prepared to make an appropriate supplemental document production to you after reviewing its files and identifying such documents.

Moreover, although all advances to your client already have been disclosed and are included in the aggregate advances on the enclosed spreadsheet, after reviewing its files my client is prepared to get behind the aggregate figures and attempt to "disaggregate" the advances in a revised spreadsheet for the time period covered by the inquiries in your letter (July 10, 2014 – July 1, 2015). The revised spreadsheet will include a breakdown of where advances, if any, identified in your letter are included in the aggregate advances in the spreadsheet during this time period.

Please note that some documentation has been placed into storage, and it will require considerable effort and time to recover it, particularly in light of the current COVID-19 pandemic that limits my client's ability to access the storage facilities where these documents are located. My client reserves the right to seek or condition production on reimbursement of expenses and costs incurred in retrieving the documents from storage.

Please call me at your convenience so we can discuss next steps and attempt to resolve any outstanding issues consensually.

                                                         Sincerely,

                                                         Jeffrey D. Sternklar

cc:     (By E-Mail)
           Mr. Todd Enright
           Mr. Robert Mahoney
           Kellie Fisher, Esq.